**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL BUCKENTIN AND MARY BUCKENTIN,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:11-CV-00532-RDP** |
| | } | |
| **SUNTRUST MORTGAGE CORPORATION,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OPINION**

This case is before the court on Defendant's Motion for Summary Judgment (Doc. # 44). The Motion has been fully briefed.  (Docs. # 45, 48, 52).  For the reasons discussed below, the court concludes the Motion is due to be granted.

**I.      INTRODUCTION**

This case concerns a mortgage on Plaintiffs' home, and whether Plaintiffs had an obligation to continue to pay that mortgage while in protracted litigation with a manufacturer of defective drywall (related to defects which made the home uninhabitable).  The drywall manufacturer is not a party to this litigation.

Plaintiff's Amended Complaint (Doc. # 18) asserts the following claims against Defendant SunTrust Mortgage, the mortgage servicer:

1. Count One - Wrongful Foreclosure
2. Count Two - Fraud
3. Count Three - Breach of Contract
4. Count Four - Breach of Implied Covenant of Good Faith and Fair Dealing
5. Count Five - Intentional Infliction of Emotional Distress
6. Count Six - Negligent and/or Wanton Hiring, Training, and/or Supervision
7. Count Seven - Negligence

8.      Count Eight - Wantonness
9.      Count Nine - Slander of Title
10.     Count 10 - RESPA
11.     Count 11 - FDCPA

(Doc. # 18).

## II.   FACTS[1]

In November 2007, Plaintiffs purchased land and a house located at 4033 Butler Springs Place, Hoover, Alabama 35226 (the "Property") for approximately $900,000.00. (Doc. # 46, Ex. A at 37, 44). Plaintiffs financed the purchase of the Property with a loan from Wells Fargo Bank, N.A. (Doc. # 46, Ex. A at 44).

After several years, Plaintiffs began looking to refinance their Wells Fargo loan with one from another bank. (Doc. # 46, Ex. A at 46; (Doc. # 46, Ex. B at 41-42). Plaintiffs eventually decided to refinance with a loan from GenEquity Mortgage. (Doc. # 46, Ex. B at 42). On March 27, 2009, Plaintiffs signed a promissory note (the "Note") in favor of GenEquity in the amount of $416,874.00. (Doc. # 46, Ex. A at 53-54, Ex. 6 thereto). Plaintiffs also executed a mortgage (the "Mortgage"), providing the Property as security for their loan. (Doc. # 46, Ex. A, Ex. 6 thereto). On

---

[1] If facts are in dispute, they are stated in the manner most favorable to the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). The court notes that Defendant has moved to strike Plaintiffs' opposition brief and or have all its stated facts deemed admitted. (Doc. # 51). Admittedly, Plaintiffs' brief shows a complete disregard of the court's summary judgment procedures. (Doc. # 34 at p. 5). Appendix II to the Scheduling Order (Doc. # 34) provides that, in supporting and responding to summary judgment, "Counsel must state facts in clear, unambiguous, simple, declarative sentences." (Doc. # 34, Appx. II(D)). Appendix II further provides, "Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based. *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*" *Id*. (emphasis added). Plaintiffs' opposition to Defendant's Motion for Summary Judgment does not address Defendant's statement of facts in the proscribed manner. This has made the court's assessment of which material facts are actually in dispute much more difficult. Nonetheless, even though Defendant's Motion to Strike is unopposed, because the court prefers to rule on motions on their merits, rather than on technicalities, the court will develop the "summary judgment" facts of the case as best it can from what has been provided by the parties. To the extent Plaintiffs disagree with the court's determination of those facts, they should consider the aforementioned procedural failures. Therefore, the court will deny Defendant Suntrust Mortgage Corporation's Motion to Strike Plaintiffs' Summary Judgment Opposition Brief, Or in the Alternative, Deem Admitted Suntrust's Undisputed Material Facts (Doc. # 51).

or about May 1, 2009, the servicing rights to collect on Plaintiffs' Note were assigned to SunTrust. (Doc. # 46, Ex. A, Ex. 9 thereto).

From the time that Plaintiffs purchased the Property, they had problems with appliances failing in the house. (Doc. # 46, Ex. A at 37-38). The presence of Chinese Drywall was officially confirmed in Plaintiffs' home during the spring of 2010. (Doc. # 46, Ex. A at 37-38). Shortly thereafter, Plaintiffs filed suit against Knauf, the manufacturer of their drywall, and that case was centralized as part of Multi-District Litigation in New Orleans, Louisiana. (Doc. # 46, Ex. A at 40). Plaintiffs have entered into a tentative settlement in the Knauf case that will eventually result in Plaintiffs' home being remediated. (Doc. # 46, Ex. A at 41-43; (Doc. # 46, Ex. B at 34-35).

In late July or early August of 2010, Michael Buckentin called SunTrust to request a forbearance from paying mortgage payments because of the presence of Chinese Drywall. (Doc. # 46, Ex. A at 63-64). On August 17, 2010, SunTrust offered, and ultimately the Buckentins accepted, a forbearance agreement which contained the following language:

**FORBEARANCE AGREEMENT**

Loan 0212774582

09-01-10
10-01-10
11-01-10

This forbearance allows for non-payment of the mortgage for the dates listed above.

...

All of the provisions of the note and security instrument, except as herein provided, shall remain in full force and effect. Upon the breach of any provision of this agreement, SunTrust Mortgage may terminate this agreement and institute foreclosure proceedings in accordance with the terms of the security instrument without regard to this agreement.

**\*\*Note: On or before 11-01-10, you must send updated financials. At that time, your account will be reviewed for a possible Loss Mitigation workout.\*\***

(Doc. # 46, Ex. A at 65, Ex. 11 thereto) (emphasis in original).

By December 2010, the parties had not agreed on an additional forbearance.  (Doc. # 46, Ex. A at 69-70).  However, Plaintiffs did not make their December mortgage payment, nor have they made any mortgage payments since that time.  (Doc. # 46, Ex. A at 99).  The last payment made by Plaintiffs on their Mortgage was in August 2010. (Doc. # 46, Ex. A at 99).

In December 2010, Plaintiffs moved out of the Property and into an apartment. (Doc. # 46, Ex. A at 62).  They also had a number of discussions with SunTrust about obtaining a further forbearance. (Doc. # 48-3, Ex. P).  On December 14, 2010, Plaintiffs provided updated information to SunTrust, including the fact that Mr. Buckentin was not currently working and was seeking employment.  (Doc. # 48-1, Ex. F).  And, on or about December 27, 2010, Plaintiffs' loan was approved for foreclosure.  (Doc. # 48-3, Ex. P).

Starting on December 31, 2010 and continuing into January 2011, Plaintiffs had several discussions with SunTrust regarding their loan. (Doc. # 46, Ex. A at 68; Doc. # 48-3, Ex. P).  During one of these discussions—with an individual who Plaintiffs state was named "Derek"—SunTrust retroactively offered Plaintiffs an additional two months forbearance, which would expire on February 1, 2011. (Doc. # 46, Ex. A at 88-92).  Mr. Buckentin described the verbal agreement as follows:

> Q.   And then you stated that at some point you were informed that the forbearance was extended; is that correct?
>
> A.   Yes.
>
> Q.   Okay. Who informed you of that?

4

> A.   On January 4th, the previous day, which, I believe, was Monday, the 3rd of January, I had called again, trying to figure out what's going on. And I had talked to somebody named Derek.
>
> Q.   And what did Derek say?
>
> A.   ... [O]n the following day, he actually called me back and said that from his team lead, who I believe was like a supervisor, he said that they had decided to extend the forbearance until – until – that they had actually extended the forbearance until February 1st ... .
>
> ...
>
> A.   It also says they will correct the delinquent payment issue with the Credit Bureau. ...

(Doc. # 46, Ex. A at 88-90).

Plaintiffs claim they relied upon the information provided by "Derek" about the second, verbal forbearance agreement and further testified that they had no reason to believe he would not follow through on their discussion:

> Q.   Okay. When Derek made the initial statement to you on January 4th, do have any reason to believe that he was lying?
>
> A.   No.
>
> Q.   Do you believe that Derek thought that it would not be reported as delinquent?
>
> A.   an you re-state that question, please.
>
> Q.   Do you have any evidence that Derek knew that your account was going to be reported as delinquent but was not telling you the truth?
>
> A.   No.

(Doc. # 46, Ex. A at 125-26).  As of March 4, 2011, SunTrust was reporting Plaintiffs' credit as current. (Doc. # 46, Ex. C at ¶¶ 7-8; Ex. A thereto).

After Plaintiff's mortgage had been approved for foreclosure, SunTrust retained the services of Johnson & Freedman, LLC ("Johnson & Freedman") to initiate the foreclosure proceedings. (Doc.

# 46, Ex. C at ¶ 4).  In connection with the foreclosure proceedings, on January 27, 2011, Johnson and Freedman sent an acceleration letter and foreclosure notice to Plaintiffs stating that a foreclosure sale was scheduled for Plaintiffs' Property on February 17, 2011.  (Doc. # 46, Ex. A at  94; Doc. # 18-1, Ex. J).  After receiving the acceleration letter, Plaintiffs made additional phone calls to SunTrust and retained legal counsel.  (Doc. # 46, Ex. A at  94-98).

On February 3, 2011, Plaintiffs sent a letter to the President of SunTrust, informing him of the Chinese Drywall issues and asking several questions related to their mortgage loan. (Doc. # 18-1, Ex. K).  Plaintiffs' February 3, 2011 requested the following information:

- "How can SunTrust agree to forbearance and at the same time foreclose on my house?

- How can my house that is involved in Toxic Chinese Drywall Litigation be considered for foreclosure when both Fannie and Freddie say that it should not be reported as delinquent?

(Doc. # 48-1, Ex. K).

On March 7, 2011, in response to Plaintiffs' February 3 letter, Cora-Semmes Bryce, a representative of SunTrust, sent a detailed letter to Plaintiffs' counsel explaining the forbearance agreements between the parties and requesting additional information regarding Plaintiffs' Chinese Drywall lawsuit.  (Doc. # 18-1, Ex. M).  The March 7, 2011 letter explained that the initial three-month forbearance period (September, October and November 2010) expired without a request to extend the forbearance and the account was referred to outside counsel for foreclosure proceedings. (Doc. # 48-1, Ex. M).  The letter further explained that, after the Buckentins requested a further forbearance period, it was granted retroactively by Fannie Mae until February 1, 2011. (Doc. # 48-1, Ex. M).

In the interim, on February 18, 2011, SunTrust sent Plaintiffs a written offer for an additional two months of forbearance. (Doc. # 48-4, Ex. Q).  Plaintiffs rejected the offer of an additional forbearance period. (Doc. # 46, Ex. A at 97-98; Ex. 23 thereto).

Although a foreclosure sale was scheduled, it never occurred.  SunTrust has never foreclosed on the Property. Doc. # 46, Ex. A at 122-23).[2]

## III.    SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts

---

[2] Plaintiffs also blame certain credit issues on SunTrust.  On January 21, 2011, the credit limit on Mr. Buckentin's Gold Delta SkyMiles credit card was reduced. (Doc. # 18-1, Ex. G).  Around this same time, the credit limit on Mr. Buckentin's Capital One credit card was reduced.  (Doc. # 18-1 Ex. G).  Plaintiffs assert that one of the credit card companies contacted them on December 31, 2010 and told them their credit limit was being reduced because SunTrust had reported them as "delinquent on their mortgage." (Doc. # 48-1, Ex. K).  However, as of January 29, 2011, Mr. Buckentin's Experian Credit file stated that he has "no late payments" and his filed contained no "accounts listed as negative" and no "accounts in collections." (Doc. # 48-2, Ex. O).  Furthermore, as of March 4, 2011, SunTrust was reporting Plaintiffs' account as current.  (Doc. # 46-8, Ex. A thereto).

and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

"To be admissible in support of or in opposition to a motion for summary judgment, a document must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Saunders v. Emory Healthcare, Inc.*, 360 F. App'x 110, 113 (11th Cir. 2010) (citing 10 A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2722, at 382-84 (3d ed.1998)).

Furthermore, the "liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a) ... does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage." *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour*, 382 F.3d at 1315 (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)). The claims before the court in this case are those set forth by Plaintiffs in their Amended Complaint. (Doc. # 18).

IV.     **DISCUSSION**

A.      **Introduction**

The introduction to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment summarizes this case as follows:

> The facts of this case are simple. It won't require expert witnesses or complicated forensic analysis. Either the court will find that there was no default on which to base a foreclosure action and hold SunTrust accountable for it and the resulting mayhem or the court will find that there was a default and the Buckentins deserved to lose their home in foreclosure.

(Doc. # 48 at 1).

Initially, it bears emphasis that there has been no foreclosure. Plaintiffs have not made a payment on their home since August 2010. Nonetheless, to date the home is still theirs. Admittedly, Plaintiffs' home has been uninhabitable, but SunTrust is in no way responsible for the Chinese Drywall in Plaintiffs' home. Plaintiffs appear to be under the impression that the Chinese Drywall issue necessarily relieves them of the burden of making their mortgage payment, but they have presented no factual, legal, or logical support for this assertion. SunTrust worked with Plaintiffs, albeit in an imperfect manner, to help alleviate the burden of making payments on their mortgage at a time when Plaintiffs, through no fault of SunTrust, were unable to reside in their home. However, while SunTrust certainly could have handled this matter more efficiently and accurately, it cannot be said that Plaintiffs are blameless for the imperfect nature of this process. Plaintiffs obtained a three month forbearance for September, October and November 2010. It was not until January 2011 that SunTrust confirmed that Plaintiffs would be allowed a further forbearance until February 1, 2011 (*i.e.*, for December 2010 and January 2011). Thus, it is undisputed that Plaintiffs were in default for a period of time before they obtained the additional, retroactive forbearance until

February 1, 2011.  It is further undisputed that they have been in default at all times since they rejected the offer of the third forbearance for March and April 2011.  It is against this backdrop that the court evaluates Plaintiffs' claims.

**B.      Plaintiffs' Wrongful Foreclosure Claim Fails as a Matter of Law**

Plaintiffs assert that "Defendant improperly used the power of sale granted to it in the mortgage agreement."  (Doc. # 48).  That is, Plaintiffs assert that Defendant wrongfully initiated foreclosure proceedings when, according to Plaintiffs, they were not in default.  (Doc. # 48).  In response, Defendant maintains that Plaintiffs' wrongful foreclosure claim fails as a matter of law because no foreclosure sale has occurred.  (Doc. # 45).

Under Alabama law, a "mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor."  *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. and Loan*, 607 So. 2d 180, 182 (Ala. 1992).  The Southern District of Alabama, faced with a wrongful foreclosure claim in the absence of a foreclosure sale, analyzed the parameters of a wrongful foreclosure claim under Alabama law.  *Hardy v. Jim Walter Homes, Inc.*, 2007 WL 174391, at *6 (S.D. Ala. 2007).  The *Hardy* court held the following:

> Plaintiffs have cited no Alabama authority, and the undersigned has found none, under which the mere scheduling of a foreclosure sale, without more, has been found to constitute a mortgagee's exercise of the power of sale.  A plain reading of [the] legal standard [enunciated in *Reeves*] strongly suggests that it cannot, and that the power of sale is exercised by selling, not merely by running a newspaper advertisement preparatory to selling.

*Id*.  The court therefore dismissed the claim for wrongful foreclosure under Rule 12(b)(6) for failure to state a claim.  *Id*.  The court agrees with the *Hardy* court's analysis of Alabama law.  *See Vance*

*v. Ocwen Financial Corp.*, 2012 WL 2036412, *2 (N.D. Ala. 2012); *McClung v. Mortgage Electronic Registration Systems, Inc.*, 2012 WL 1642209, at *4 (N.D. Ala. 2012).  Accordingly, in order to state a claim for wrongful foreclosure, a foreclosure sale must have actually taken place. *Hardy*, 2007 WL 174391, at *6.[3]  Here, as no foreclosure sale has occurred, Defendant is entitled to summary judgment on Plaintiff's wrongful foreclosure claim.

### C. Plaintiffs Have Failed to Establish Essential Elements of Their Fraud Claims (Count Two)

Although Defendant argues that Plaintiffs' fraud claim is a claim of promissory fraud, Plaintiffs' Opposition brief contends that their fraud claim is intended as a fraudulent misrepresentation and/or suppression claim.  (Doc. # 48 at 5).

### 1. Plaintiffs' Misrepresentation Claim

Plaintiff's Amended Complaint[4] asserts that the following misrepresentations were made to Plaintiffs:

1. That Defendant had granted Plaintiffs a forbearance but then reported their loan as delinquent;

2. Defendant initiated foreclosure proceeding during the forbearance period;

3. Defendant told Plaintiffs that the notice of acceleration and foreclosure were "mistakes"; and

4. Defendants verbally confirmed that Plaintiffs' forbearance was extended to February 1, 2011, but refusing to provide it in writing.

(Doc. # 18 at 6).

---

[3] Plaintiffs cite cases from other jurisdictions in support of their argument.  However, this case arises under Alabama law, and the cases from the district courts in this state interpreting Alabama law are consistent in their requirement that a foreclosure sale must have occurred for a plaintiff to state a wrongful foreclosure claim.

[4] Plaintiffs' Memorandum contains little analysis of their fraud claim and in no way clarifies the misrepresentations at issue.  (Doc. # 48 at 5).

A plaintiff alleging fraud under a misrepresentation theory in Alabama "must prove four elements: (1) a false representation; (2) that the false representation concerned a material existing fact; (3) that the plaintiff relied upon the false representation; and (4) that the plaintiff was damaged as a proximate result of the reliance." *Billy Barnes Enterprises, Inc. v. Williams*, 982 So.2d 494, 499 (Ala. 2007) (citation omitted); *see also Cook's Pest Control, Inc. v. Rebar*, 28 So.3d 716, 725 (Ala. 2009) ("To establish a prima facie case of fraudulent misrepresentation, a plaintiff must show: (1) that the representation was false, (2) that it concerned a material fact, (3) that the plaintiff relied on the false representation, and (4) that actual injury resulted from that reliance.") (citations omitted).

The record evidence is undisputed: there is nothing false about any of the alleged representations set forth above. It is true that Defendant had granted Plaintiffs a forbearance. But after that forbearance period ended, Plaintiffs were thereafter in default. Thus, despite the fact that Plaintiffs had been granted a forbearance, there was also a period of time where Plaintiffs were in default on their loan. During this interim period, after the expiration of the first forbearance period and before the second was approved, Defendant initiated foreclosure proceedings. It was shortly after the loan was approved for foreclosure that the additional forbearance was approved. The fact that no foreclosure took place also seems to support the idea that the notice of acceleration and foreclosure were, indeed, "mistakes." The court is at a loss to see how the refusal to confirm the additional forbearance period in writing constitutes a misrepresentation. The forbearance period was allowed and no foreclosure occurred then (or since, despite the fact that after February 2011, Plaintiffs rejected a further forbearance agreement). Thus, as to the alleged misrepresentations set forth in Plaintiffs' Amended Complaint, Plaintiffs simply cannot establish either of the first two

elements of their prima facie case, *i.e.*, that the representations were false and that they concerned a material existing fact.

As to the reliance element of Plaintiffs' claim, the Supreme Court of Alabama has held that "for a plaintiff to state a fraud claim, he must show that a misrepresentation induced him to act in a way that he would not otherwise have acted, that is, that he took a different course of action because of the misrepresentation." *Target Media Partners Operating Co., LLC v. Specialty Marketing,* 2012 WL 6634443 * 19 (Ala. 2012), quoting *Hunt Petroleum Corp. v. State*, 901 So.2d 1, 5 (Ala. 2004). Furthermore, "'the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances.'" *AmerUs Life Ins. Co. v. Smith*, 5 So.3d 1200, 1207 (Ala. 2008), quoting *Torres v. State Farm Fire & Cas. Co.*, 438 So.2d 757, 759 (Ala. 1983). Plaintiffs have failed to show that they took any different course of action because of the alleged misrepresentations. Further, their Opposition Brief omits any argument on this issue. (Doc. # 48 at 5-6). Therefore, Plaintiffs have failed to establish the third element of their prima facie case.

Finally, Plaintiffs have advanced no argument whatsoever that they were damaged by their alleged reliance on these alleged misrepresentations. To reiterate, no foreclosure took place. Plaintiffs have not established that SunTrust was responsible for any negative credit reporting, but to the extent they were, there was a period of time when such reporting would have been appropriate. Thereafter, as of March 4, 2011, SunTrust had corrected any negative credit reporting and was reporting Plaintiffs as current on their mortgage. Furthermore, Plaintiffs rejected an offer of a further

13

forbearance period, but still no foreclosure has taken place.  Therefore, Plaintiffs have failed to establish the fourth element of their prima facie case as to the alleged misrepresentations.

Because Plaintiffs' proof fails on all elements of their misrepresentation claim, Defendant is entitled to summary judgment on this claim.

### 2.      Plaintiffs' Suppression Claim

Plaintiffs' suppression claim is based on their allegation that Defendant, in conversations between December 2010 and February 1, 2011, suppressed from Plaintiffs the fact that they intended to foreclose.[5]  (Doc. # 48 at 5).  "To make out a prima facie case of fraudulent suppression, [a plaintiff] must show: (1) that [the defendant] had a duty to disclose; (2) that [the defendant] suppressed an existing, material fact; (3) that [the defendant] had actual knowledge of the fact of its materiality; (4) that [plaintiff's] lack of knowledge induced her to act; and (5) that she suffered actual damages as a proximate result." *Hardy v. Blue Cross & Blue Shield of Ala*., 585 So.2d 29, 32 (Ala. 1991).

As to the first element of a fraudulent suppression claim, whether Defendant had a duty to disclose, such a duty may be created either by a "confidential relations[hip]" between the parties, or from the "particular circumstances of the case." Ala.Code § 6-5-102; *see, e.g., Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc.*, 611 So.2d 238, 245-46 (Ala. 1992).  Plaintiffs have failed to present any proof or argument as to the source of Defendant's duty to speak in this case.  (Doc.

---

[5] The court agrees with Defendant that this claim sounds more like a promissory fraud claim than a suppression claim.  To establish promissory fraud (that is, a claim "based upon a promise to act or not to act in the future"), a plaintiff must also show "proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised" and "proof that the defendant had an intent to deceive." *Southland Bank v. A & A Drywall Supply Co.*, 21 So.3d 1196, 1210 (Ala. 2008)  (citations omitted).  Plaintiffs have admitted they can present no such proof.  (Doc. # 46, Ex. A at 125-26).  Therefore, had Plaintiffs stated a promissory fraud claim, it would necessarily fail.  Nevertheless, the court analyzes this claim under Plaintiffs' chosen theory.

# 48 at 5-6).  In the absence of special circumstances, Alabama law considers the lender-borrower relationship to be arms-length and does not place a duty of disclosure on the lender.  *See, e.g., Bank of Red Clay v. King*, 482 So.2d 274, 285 (Ala.1985).  Therefore, Plaintiffs have failed to establish the first element of their fraudulent suppression claim.

Plaintiffs have also failed to establish the second element of their claim, *i.e*,. that Defendant suppressed a material, existing fact.  The record establishes that, at the end of December 2010, at a time when no forbearance agreement was in place and Plaintiffs had not made their December 1, 2010 mortgage payment, Plaintiffs' mortgage was approved for foreclosure.  Although Plaintiffs have not established that Defendant had a duty to disclose this fact, Plaintiffs were, in fact, notified of the intended foreclosure by letter from the attorneys hired to effectuate that foreclosure.  (Doc. # 18-1, Exs. H and J).  Therefore, even if there were a duty to speak, there was no suppression.  Moreover, there is nothing in the record to suggest that, after the retroactive forbearance period was approved, Defendant had any intent to foreclose.  Although Johnson and Freedman had *previously* been hired to effect the foreclosure, that was *before* the granting of the second forbearance, and, importantly, a foreclosure never occurred.  Therefore, Plaintiffs have not established that Defendant suppressed a material existing fact.

Even assuming for purposes of analysis that Plaintiffs could establish the first three elements of their suppression claim, the reasonable reliance element applies equally to Plaintiffs' suppression claim.  *Houston Cnty. Health Care Auth. v. Williams*, 961 So.2d 795, 814 (Ala. 2006) ("Additionally, a plaintiff in a suppression case must prove that [it] was induced to act by [its] reasonable reliance on the state of affairs as it appeared in the absence of the suppressed information...").  As discussed above in relation to Plaintiff's misrepresentation claim, Plaintiffs

15

have not shown how they were induced to act, or that they failed to act, as a result of this alleged lack of knowledge.  (*See* Doc. # 48 at 5-6).  Therefore, Plaintiffs have failed to establish the fourth element of their suppression claim.

Finally, and again consistent with the analysis of Plaintiff's misrepresentation claim, Plaintiffs have not shown that they were damaged by any alleged suppression.  (*See* Doc. # 48 at 5-6).  Notwithstanding the fact that no mortgage payments have been made since August 2010 and Plaintiffs are not in a forbearance period, and despite the publication of the foreclosure sale, no foreclosure sale has taken place. Thus, Plaintiffs have failed to establish the fifth element of their suppression claims.

Because Plaintiffs' proof is lacking on every element of both types of fraud claims, Defendant is entitled to summary judgment on those claims.

### D.     Plaintiffs Have Failed to Establish a Breach of Contract Claim (Count Three)

"'The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages.'"  *Shaffer v. Regions Fin. Corp.*, 29 So.3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala. 2002)).

Plaintiffs claim that Defendant breached both the written and verbal forbearance agreements. Specifically, Plaintiffs' Amended Complaint alleges that, "Defendants breached said contract by reporting Plaintiffs as delinquent during the forbearance period, and then initiating foreclosure proceedings during that period." (Doc. # 18 at 7).   Plaintiffs assert that the forbearance agreement provided for a suspension of payments without negative reporting.  (Doc. # 48 at 6).  However, the

written forbearance agreement contains no term prohibiting negative reporting, nor does it incorporate any other documents. (Doc. # 48-1 at Ex. D).

Plaintiffs' claim appears to be based on two gross misconceptions: (1) that Plaintiffs were continually under a forbearance agreement; and (2) that the agreement incorporates terms not contained or incorporated into the agreement between the parties. (*See* Doc. # 48 at 6). To repeat, the first, written forbearance agreement expired before the second, verbal agreement was made. The first agreement, by its terms, covered September, October, and November 2010. It did *not* cover December 2010. No December mortgage payment was made by Plaintiffs. Thereafter, on or about January 4, 2011, a further forbearance period was approved retroactively until February 1, 2011. Thus, there was a period of time (December 2010) during which no agreement was in effect when Defendant was free to report Plaintiffs as delinquent and initiate foreclosure proceedings without violating any agreement between the parties.

Plaintiffs have failed to present any evidence (much less substantial evidence) of an alleged breach by Defendant occurring during the term of either agreement. That is, Plaintiffs have failed to show that Defendant reported them as delinquent or initiated foreclosure proceedings while there was a valid and enforceable contract in effect.[6] Even assuming that Defendant ever reported Plaintiffs as delinquent to any credit agency—something which is not entirely clear from the Rule 56 record—the summary judgment evidence on file indicates that these events occurred during the period when no forbearance agreement was in effect. The fact that *the firm of Johnson and*

---

[6] It does appear that on October 4, 2010, Defendant sent a notice to Plaintiffs that their loan was in default because the September 1, 2010 payment had not been received. (Doc. # 48-4, Ex. R). However, this notice does not establish either that Defendant made this report to anyone else, or that any foreclosure proceedings were initiated at this time. (*See* Doc. # 18 at 7)

*Freedman* corresponded with Plaintiffs about the foreclosure process after Defendant agreed to a further retroactive forbearance period is not evidence of a breach *by Defendant* during the term of the agreement.   Again—and frankly this seems to be a point completely lost on Plaintiffs—the agreement prohibits foreclosure, but no foreclosure has ever taken place.   No foreclosure was scheduled to occur during the term of the forbearance agreement.   And, no foreclosure ever took place during such an agreement.   Therefore, Plaintiffs have failed to establish a breach of the contracts at issue during their terms.

Moreover, Plaintiffs have failed to present evidence of damages, the fourth element of their prima facie case.   Plaintiffs received forbearance on their mortgage during the period of the forbearance agreements and even long thereafter.   Further, they have not established that their alleged credit issues were proximately caused by any action taken by Defendant.   Plaintiffs lay blame on SunTrust for their credit limit reductions.   However, as of January 29, 2011, Mr. Buckentin's Experian Credit file stated that he had "no late payments" and his file contained no "accounts listed as negative" and no "accounts in collections."  (Doc. # 48-2, Ex. O).   Furthermore, as of March 4, 2011, SunTrust was reporting Plaintiffs' account as current.[7]  (Doc. # 46-8, Ex. A thereto).

Because Plaintiffs' evidence fails on two elements of their prima facie case, Defendant is entitled to summary judgment on this claim.

---

[7] To be sure, Plaintiffs cannot recover any other damages on this claim.  An award of mental anguish damages is generally not allowed for breach of contract claims under Alabama law.  *Bowers v. Wal-Mart Stores, Inc.*, 827 So.2d 63, 68 (Ala. 2001). There are certain exceptional circumstances under which mental anguish damages are warranted for breach of contract claims, such as when "it is highly foreseeable that egregious breaches of certain contracts—involving one's home or deceased loved one, for example—will result in significant emotional distress." *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1359-60 (11th Cir. 2000).  However, the facts of this case fail to establish a breach, much less an egregious breach, of any contract.

**E.      Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing Claim Fails as a Matter of Law (Count Four)**

Plaintiff has not opposed Defendant's Motion for Summary Judgment on this claim, and rightly so.  This claim fails as a matter of law because no insurance contract is involved in this case.

> Although every contract contains either an express or an implied covenant that the parties will act in good faith in performing the contract, in Alabama *only insurance contracts* give rise to a duty imposed by law on which a tort claim for bad faith performance can be based. We have consistently declined in the past, and we decline again today, to extend to the area of general contract law the tort of bad faith that we have recognized in the context of insurance contract cases. *See Harrell v. Reynolds Metals Co.*, 495 So.2d 1381, 1388 (Ala.1986).

*Grant v. Butler*, 590 So.2d 254, 256 (Ala. 1991) (emphasis added).  Because the contract at issue is not an insurance contract, Plaintiff's breach of implied covenant of good faith and fair dealing claim fails as a matter of law, and Defendant is entitled to summary judgment on this claim.

**F.      Plaintiffs' Intentional Infliction of Emotional Distress Claim is Not Actionable (Count Five)[8]**

In Alabama, to establish an outrage claim, "'a plaintiff must demonstrate that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.'"  *Little v. Robinson*, 72 So.3d 1168, 1172 (Ala. 2011) (quoting *Potts v. Hayes*, 771 So.2d 462, 465 (Ala. 2000)), *reh'g denied* (June 10, 2011).  The Alabama Supreme Court has narrowly defined the second element listed above: "'By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'"  *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1043-

---

[8] In Alabama, the tort of "intentional infliction of emotional distress" is known as a claim for "outrage." *See Thomas v. Williams*, 21 So. 3d 1234, 1237 (Ala. Civ. App. 2008).

44 (Ala. 1993) (quoting *Am. Rd. Serv. Co. v. Inmon*, 394 So.2d 361, 365 (Ala. 1980)).  In *Thomas*,

the Alabama Supreme Court reiterated that "the tort of outrage is a very limited cause of action that

is available only in the most egregious circumstances." *Id.* at 1044. Furthermore, the *Thomas* court

highlighted that at the time that case was decided (approximately 12 years since outrage was first

recognized in Alabama as a tort), the Court had "found a jury question on an outrage claim ... [in]

only three categories: 1) ... wrongful conduct in the context of family burials, ... 2) ... where

insurance agents employed heavy-handed, barbaric means in attempting to coerce the insured into

settling an insurance claim, ... and 3) ... egregious sexual harassment." *Id.* (citations omitted).

Admittedly, the Alabama Supreme Court has recently indicated that these three categories

are not the exclusive types of claims that may constitute outrage.  *Little v. Robinson*, 72 So.3d 1168,

1172 (Ala. 2011).  Nevertheless, the court has no hesitation in concluding that the facts of this case

present nothing even approaching the level of extreme conduct for which an actionable outrage claim

is reserved.  Nor have Plaintiffs presented evidence of the type of extreme emotional distress

required to support an actionable outrage claim.  Therefore, Defendant is entitled to summary

judgment on this claim.

G.    **Plaintiffs Have Failed To Establish a Negligent and/or Wanton Hiring, Training, and/or Supervision Claim (Count Six)**

"The torts at issue have common elements. Namely, to prove a claim under Alabama law for

either negligent/wanton entrustment, negligent hiring, negligent supervision or negligent retention,

a plaintiff must demonstrate that the employer knew, or in the exercise of ordinary care should have

known, that its employee was incompetent."  *Britt v. USA Truck, Inc.*, 2007 WL 4554027, *4 (M.D.

Ala. 2007), citing *Armstrong Bus. Servs. v. AmSouth Bank*, 817 So.2d 665, 682 (Ala. 2001)

(negligent supervision); *Bruck v. Jim Walter Corp.*, 470 So.2d 1141, 1144 (Ala. 1985) (negligent/ wanton entrustment); *Brown v. Vanity Fair Mills, Inc.*, 277 So.2d 893, 895 (Ala. 1973) (negligent retention); *Sanders v. Shoe Show, Inc.*, 778 So.2d 820, 824 (Ala. Civ. App. 2000) (negligent hiring).[9] Therefore, unless the context requires otherwise, and for ease of reference, the court will refer to all of Plaintiffs' negligence claims advanced in Count Six under the collective term "negligent retention."

To succeed on their negligent retention claim, Plaintiff must establish two things: (1) that the underlying conduct of one or more employees was wrongful or tortious; and (2) that Defendant had actual or constructive knowledge of that alleged incompetence. *See Hester v. Brown*, 512 F.Supp. 2d 1228, 1238 (M.D. Ala. 2007). "The 'incompetency' of the offending employee in a negligent training and supervision claim, ... , must be based on an injury resulting from a tort which is recognized under Alabama common law." *Sears v. PHP of Alabama, Inc.*, 2006 WL 932044, *19, n.13 (M.D. Ala. 2006), citing *Stevenson v. Precision*, 762 So.2d 820, 824 (Ala.1999) (affirming summary judgment on negligent supervision/training claim for lack of underlying tort claim). That is, not just any "incompetency" suffices to give rise to a cause of action for so-called negligent hiring, training, and supervision liability. Rather, Plaintiffs must prove that an allegedly incompetent employee committed a state law tort. *See Stevenson v. Precision Standard, Inc.*, 762 So.2d 820, 824 (Ala. 1999)

Here, Plaintiffs assert that the underlying tort is "fraud by suppression of material fact." (Doc. # 48 at 12). Plaintiffs cannot maintain a negligent retention claim based upon this alleged

---

[9] The court considers these claims together because it "observes that there is no discernible distinction between claims of negligent supervision and claims of negligent training, ... ." *Sears v. PHP of Alabama, Inc.*, 2006 WL 932044, *19, n.13 (M.D. Ala. 2006) (citing *Zielke v. AmSouth Bank, N.A.*, 703 So.2d 354, 358 n. 1 (Ala. Civ. App. 1996)).

underlying tort, or any other which has not been established.  First, as discussed above, Plaintiffs have failed to establish the underlying fraud claims.  Thus, Plaintiffs have not established either that the unnamed employees committed, or that Plaintiffs were injured as a result of, an underlying tort recognized by Alabama law.  Second, Plaintiffs do not even attempt to argue that the evidence in the record establishes that Defendant SunTrust was aware of the alleged incompetence of the unnamed employees.  (Doc. # 48 at 11).  Plaintiffs assert that this is a fact question for the jury.  But they misunderstand their burden in responding to Defendant's Motion.  A review of the Rule 56 record shows that Plaintiffs have failed to sustain their burden of presenting substantial evidence on these issues (*i.e.*, the underlying tort and knowledge) that would allow their negligent retention claim to survive Defendant's Motion.

To establish a wantonness claim requires more that a mere showing of a higher degree of culpability than negligence.  Wantonness is characterized as a conscious act and requires a different and more stringent set of proof.  *See, e.g., Ex parte Essary*, 992 So.2d 5, 9-10 (Ala. 2007).  Plaintiffs' failure to establish even their negligent retention claim necessarily precludes their assertion of any wantonness claim related to the same subject matter.

For these reasons, Defendant is entitled to summary judgment on Plaintiff's negligent and/or wanton hiring,[10] training, and/or supervision claim.

---

[10] As to Plaintiff's negligent hiring claim, there is no evidence at all that Defendant hired these unnamed, allegedly incompetent employees knowing that they had committed (or for that matter may in the future commit) a tort recognized under Alabama law.  Therefore, summary judgment on Plaintiff's negligent and/or wanton hiring claim is appropriate for this reason as well.

**H.      Plaintiffs' Negligence and Wantonness Claims Fail as a Matter of Law (Counts Seven and Eight)**

"To establish negligence, [a] plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury. *Albert v. Hsu*, 602 So.2d 895, 897 (Ala. 1992)." *Martin v. Arnold*, 643 So.2d 564, 567 (Ala.1994). Further, "'[t]he absence of any one of these [elements] renders ... the evidence insufficient [to establish negligence].'" *Franklin v. City of Athens*, 938 So.2d 950, 953 (Ala.Civ.App. 2005) (quoting *Calvert Fire Ins. Co. v. Green*, 278 Ala. 673, 677, 180 So.2d 269, 273 (1965)). Whether a legal duty exists is a question of law. *Rose v. Miller & Co.*, 432 So.2d 1237, 1238 (Ala.1983). "To establish wantonness, [a] plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains." *Martin*, 643 So.2d at 567.

Plaintiffs allege that Defendant owed them a duty to responsibly manage their mortgage, and that their failure to do so gives rise to tort liability under negligence and wantonness theories. (Doc. # 48 at 13). Plaintiffs allege that this duty arose because of the relationship between a mortgage servicer and a borrower. Plaintiffs cite absolutely no case law establishing the duty they claim was breached. (Doc. # 48 at 13).

The undersigned agrees with the Middle District of Alabama's recent analysis of Alabama law regarding negligence and wantonness claims asserted by a mortgagor against the mortgagee and/or mortgage servicer. *See McClung v. MERS, Inc.*, 2012 WL 1642209 *7-8 (N.D. Ala. 2012) (agreeing with *Blake v. Bank of America, N.A.*, 2012 WL 607976 (M.D. Ala. 2012)); *Fassina v.*

23

*CitiMortgage, Inc.*, 2012 WL 2577608 *6 (N.D. Ala. 2012) (same).  First, Alabama law "does not recognize a tort-like cause of action for the breach of a duty created by a contract."  *McClung*, 2012 WL 1642209, at *7, citing *Blake*, 2012 WL 607976, at *3.  "[A] negligent failure to perform a contract . . . is but a breach of the contract."  *McClung*, 2012 WL 1642209, at *7, quoting *Blake*, 2012 WL 607976, at *3; *see also Barber v. Bus. Prods. Ctr., Inc.*, 677 So.2d 223, 228 (Ala. 1996), *overruled on other grounds by White Sands Grp., LLC v. PRS II, LLC*, 32 So.3d 5 (Ala. 2009) ("a mere failure to perform a contractual obligation is not a tort").  "A tort claim can only be asserted when the duty of reasonable care, which one owes to another in the course of day-to-day affairs, has been breached and causes personal injury or property damages."  *McClung*, 2012 WL 1642209, at *7 (citing *Blake*, 2012 WL 607976, at *3).  It follows that Alabama law "does not recognize a cause of action for negligent or wanton mortgage servicing."  *Id.*, dismissing Plaintiff's claim for negligent, careless, and wanton mortgage servicing, citing *Blake*, 2012 WL 607976, at *3-4; *Fassina*, 2012 WL 2577608 at *6 (same).

Any obligations Defendant owed to Plaintiffs arose from the mortgage agreement, not from the duty of reasonable care generally owed to members of the public.  Because the duty Defendant allegedly breached is based on a contract, and because Alabama law does not permit Plaintiff to assert a tort claim against Defendants for their purported breach of a contract, both Plaintiffs' negligence and wantonness claims are not actionable under Alabama law.[11]

---

[11] Additionally, neither the Home Affordable Modification Program ("HAMP"), which was implemented by the Secretary of the United States Treasury pursuant to the Emergency Economic Stabilization Act of 2008, nor the Troubled Asset Relief Program ("TARP") provided borrowers with a private cause of action.  *Nelson v. Bank of America, N.A.*, 446 F. App'x 158, 159 (11th Cir. 2011); *see also Mosley v. Wells Fargo Bank, N.A.*, 802 F. Supp. 2d 695, 699 (E.D. Va. 2011) (noting that federal courts have uniformly held that the HAMP does not create a private cause of action for borrowers against lenders); *Thomas v. Pentagon Federal Credit Union*, 393 F. App'x 635, 638 (11th Cir. 2010); *see also Wachovia Bank, Nat. Assoc. v. Lone Pine, Inc.*, 2010 WL 2553880, at *2 (N.D. Ga. June 15, 2010) (listing district court cases from this Circuit and the Ninth Circuit that have agreed that the TARP does not provide a private cause of

# I.     Plaintiffs Have Failed to Establish a Slander of Title Claim (Count Nine)

Claims for slander of title must be brought under section 6-5-211 of the Alabama Code, which provides that "[t]he owner of any estate in lands may commence an action for libelous or slanderous words falsely and maliciously impugning his title." Ala.Code § 6-5-211. The elements of a slander of title action under Alabama law are:

> (1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail).

*Folmar v. Empire Fire and Marine Ins. Co.*, 856 So.2d 807, 809 (Ala. 2003) (citations omitted).

To show malice, Plaintiffs must prove that Defendant intentionally or recklessly disparaged the title to their property. *See, e.g., Dabbs v. Four Tees, Inc.*, 36 So.3d 542, 558 (Ala.Civ.App. 2008). "The act against which a slander-of-title action is taken must have been false and malicious when it was performed." *Folmar*, 856 So.2d at 809.

> Malice does not equate with negligence. *Alabama Power Co. v. Laney*, 428 So.2d 21 (Ala. 1983). Malice requires "proof that [the defendant] intentionally disparaged [the] plaintiff's title to the property slandered or recklessly disparaged [it] *without information* sufficient to support a bona fide belief" in the veracity of the disparaging statement. *Harrison v. Mitchell,* 391 So.2d 1038, 1041 (Ala.Civ.App. 1980) (emphasis added). In other words, "if the defendant had probable cause for believing the statement, there can in law be no malice." *[Merchants Nat'l Bank of Mobile v.] Steiner*, 404 So.2d [14] at 21 [ (Ala. 1981) ] (emphasis added).

*Roden v. Wright,* 646 So.2d 605, 611 (Ala. 1994).

Plaintiffs have not presented any evidence of malice on Defendant's part.  Their argument appears to presume that malice is shown from mere falsity.  That is not the law.  Furthermore, even

---

action to individual borrowers against lenders).

the falsity element is somewhat muddled because in this case there was a time—before the second, retroactive forbearance was approved—when it was an objectively true statement that Plaintiffs were in default on their mortgage. And the Rule 56 evidence indicates that it was during this time when Defendant hired Johnson and Freedman to initiate the foreclosure proceedings.

Equally problematic for Plaintiffs' claim is that the alleged false statements were published by Johnson and Freedman, rather than Defendant. Furthermore, Defendant has readily admitted that the fact that the foreclosure proceedings were not stopped was a mistake. It is Plaintiff's burden to show malice in the publication of the false statements. The Rule 56 evidence before the court is simply insufficient to support a finding that Defendant published any false statements with malice. Therefore, Plaintiffs have failed to establish the third element of their prima facie case on their slander of title claim.

Moreover, Plaintiffs have failed to present substantial evidence in support of the sixth element of their claim, *i.e.*, they suffered special damages proximately caused by the alleged false statements. Plaintiff's Amended Complaint alleges that "Plaintiffs were caused to suffer injuries including but not limited to damage to their credit and reduction in the credit limits on cards they currently hold" as a result of the slander of title. (Doc. # 18 at 10). However, the evidence before the court shows that those damages occurred before any false statement was published.

Plaintiffs assert that one of their credit card companies contacted them on December 31, 2010 and told them their credit limit was being reduced because SunTrust had reported them as "delinquent on their mortgage."[12] (Doc. # 48-1, Ex. K thereto). On January 21, 2011, the credit limit

---

[12] At this time, Plaintiffs were delinquent on their mortgage because the second, retroactive forbearance had not yet been accepted or approved.

on Mr. Buckentin's Gold Delta SkyMiles credit card was reduced.  (Doc. # 18-1, Ex. G).  Around this same time, the credit limit on Mr. Buckentin's Capital One credit card was reduced.  (Doc. # 18-1 Ex. G).  However, as of January 29, 2011, Mr. Buckentin's Experian Credit file stated that he had "no late payments" and his file contained no "accounts listed as negative" and no "accounts in collections."  (Doc. # 42-8, Ex. O).

Plaintiffs identify the alleged false publications as occurring on January 29, February 5, and February 12, 2011.  (Doc. # 48 at 14).  These publications post-date the alleged "special damages" that Plaintiffs claim resulted from the alleged false publications.  Plaintiffs have identified no other special damages. Therefore, Plaintiffs have failed to present substantial evidence establishing the sixth element of their slander of title claim.

Because Plaintiff's Slander of Title claim fails on at least two essential elements, Defendant is entitled to summary judgment on this claim.

### J.      Plaintiffs Have Failed to Establish their RESPA Claim (Count Ten)

The Real Estate Settlement Procedures Act ("RESPA") sets forth the procedures that a loan servicer must follow, and certain actions that it must take, upon receiving a qualified written request ("QWR") from a borrower. See 12 U.S.C. § 2605(e).  RESPA defines a QWR as follows:

> [A] qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).  Plaintiffs' Amended Complaint identifies the QWR at issue as their February 3, 2011, letter to Sterling Edmunds, Jr., President and CEO, SunTrust Mortgage, Inc.  (Doc. # 18 at ¶ 26, Ex. K).

Section 2605(e) of RESPA requires a loan servicer to provide a written response to a borrower's QWR within 20 days and take any necessary action within 60 days. 12 U.S.C. § 2605(e). Under RESPA, a loan servicer that fails to adequately respond to a QWR "shall be liable to the borrower for each such failure in ... an amount equal to the sum of any actual damages to the borrower as a result of the failure ...." 12 U.S.C. § 2605(f)(1)(A).

To succeed on a claim under § 2605(e), Plaintiffs must show: (1) that Defendant is a servicer; (2) that Defendant received a QWR from the borrower; (3) that the QWR related to the servicing of the loan; (4) that Defendant failed to respond adequately; and (5) that Plaintiffs are entitled to actual or statutory damages. 12 U.S.C. § 2605(e); *Frazile v. EMC Mortg. Corp.*, 382 F. App'x 833, 836 (11th Cir. 2010) (holding that a damages allegation "is a necessary element of any claim under § 2605").

Assuming the February 3, 2011 letter was a valid QWR, it only requested the following information:

•     How can SunTrust agree to forbearance and at the same time foreclose on my house?

•     How can my house that is involved in Toxic Chinese Drywall Litigation be considered for foreclosure when both Fannie and Freddie say that it should not be reported as delinquent?

(Doc. # 48-1, Ex. K).

Plaintiff's QWR is dated February 3, 2011, but there is no evidence in the record regarding how the letter was transmitted to Defendant.  That is, there is no evidence of the date it was actually

28

mailed or whether it was faxed.  Defendant was required to respond to the QWR within twenty (20) business days, "excluding legal public holidays, Saturdays and Sundays."  Defendant's response to the QWR was dated March 7, 2013.  Thus, excluding President's Day and intervening weekends, Defendant's response was sent twenty-one (21) days after Plaintiffs' letter was *written*.  "In other contexts, federal regulations provide a presumption that mail is received within five days of mailing." *U.S. v. Devlin*, 2013 WL 275968 * 10 (M.D. Fla. 2013), citing *Butler v. Potter*, 2011 WL 1641270 * 3 (N.D. Fla. 2011), in turn citing 29 C.F.R. § 1614.604(b)); 20 C.F.R. § 422.210(c). Absent any proof to the contrary, the court allows Defendant the presumption that the letter was received within five days of mailing.  Therefore, the presumption is that the letter was received by Defendant on February 8, 2011.  Excluding weekends and the President's Day holiday following this presumed date of receipt, Defendant had until March 9, 2011 to respond.  Because the Rule 56 evidence shows Defendant responded on March 7, 2011, Plaintiffs have not shown that Defendant failed to acknowledge their QWR within the appropriate time frame.[13]

Plaintiffs further allege that Defendant failed to "fully resolve the issues raised within sixty (60) days of receipt."  (Doc. # 48 at 16).  However, Plaintiffs misconstrue what was actually requested in the QWR.  As discussed above, the QWR only requested two things, and Defendant provided a response to both those requests.  In the March 7, 2011 letter from Cora-Semmes Bryce, Defendant explained what the facts of the case have shown: that the initial three-month forbearance period (September, October and November 2010) expired without a request to extend the forbearance, and the account was referred to outside counsel for foreclosure proceedings.  (Doc. #

---

[13] Stated another way, Plaintiffs have not presented evidence tending to exclude the inference that Defendant responded to the QWR within the required time frame.

48-1, Ex. M).  Defendant also discussed Plaintiffs' request for a further forbearance period, and that request was granted retroactively until February 1, 2011.  Defendant further explained that Fannie Mae had agreed to a further extension of the forbearance period until April 1, 2011, but that offer was rejected by Plaintiffs.[14]  Thus, Plaintiffs have not shown that Defendant failed to timely or properly respond to their QWR.

Even if Defendant's response had been untimely or inadequate in any manner, Plaintiffs nevertheless have failed to establish support for their RESPA claim because they have not shown how they suffered any actual damages attributable to the purported RESPA violation. "Plaintiffs arguably may recover for non-pecuniary damages, such as emotional distress and pain and suffering, under RESPA. *McLean v. GMAC Mortg. Corp.*, 398 Fed.Appx. 467, 471 (11th Cir. 2010) (citing *Banai v. Sec'y U.S. Dep't of Hous. & Urban Dev. ex rel. Times*, 102 F.3d 1203, 1207 (11th Cir. 1997) (a case under the Fair Housing Act).  Plaintiffs cite Mr. Buckentin's affidavit as support for their claim that they suffered emotional distress damages.  (Doc. # 48 at 18).  However, this is not competent evidence demonstrating that any of Plaintiffs' alleged emotional injuries were caused by the alleged RESPA violation.  The RESPA violation alleged by Plaintiffs occurred at the earliest on March 7, 2011, the date of the allegedly inadequate and untimely response.  The last events, including emotional distress damages, chronicled in Mr. Buckentin's affidavit occurred on or about February 8, 2011.  Thus, Plaintiffs' RESPA claim fails as a matter of law for the additional reasons that Plaintiffs have failed to present evidence that they suffered any actual damages as a result of the alleged RESPA violation.

---

[14] Not only did Plaintiffs reject that offer of further forbearance, they failed to make any further payments on their mortgage. Thus, they have been in default since February 1, 2011.

Defendant is entitled to summary judgment on Plaintiffs' RESPA claim because Plaintiffs have failed to adequately establish either Defendant failed to respond adequately or in a timely manner to their QWR, or that they suffered actual damages as a result of the alleged RESPA violation.

### K.   Plaintiffs' FDCPA Claim Fails as a Matter of Law (Count Eleven)

In their Amended Complaint, Plaintiffs assert a claim under the false name exception of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*  (Doc. # 18 ¶¶ 89-105). The FDCPA provides a civil cause of action against debt collectors who violate the provisions of the Act.  *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).  To assert a claim under the FDCPA, a plaintiff must establish the following elements: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Janke v. Wells Fargo and Co.*, 2011 WL 3664359, *2 (M.D. Ala. 2011); *see also Hunt v. 21st Mortg. Corp.* 2012 WL 3903783 *5 (N.D. Ala. 2012); *Kaplan v. Assetcare, Inc.*, 88 F.Supp.2d 1355, 1360–61 (S.D. Fla. 2000). .

A debt collector is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  In general, the FDCPA "applies only to debt collectors *and not to* creditors or mortgage servicers." *Ingram v. Green & Cooper, Attorneys L.L.P.,* 2012 WL 1884598 *3 (N.D. Ga. 2012) (emphasis added); *Humphrey v. Wash. Mut. Bank, FA.*, 2007 WL 1630639 *2 (N.D. Ga. 2007); *see also Madura v. Lakebridge Condo. Ass'n Inc.*, 382 F. App'x

862, 864 (11th Cir. 2010).  "[C]onsumer's creditors, a mortgage servicing company, or an assignee of a debt are not considered 'debt collectors, as long as the debt was not in default at the time it was assigned.'"  *Reese v. JPMorgan Chase & Co.*, 686 F.Supp.2d 1291, 1307 (S.D. Fla. 2009), quoting *Monroe v. CitiMortgage, Inc*., 2007 WL 1560194 at *2 (M.D. Fla. 2007), in turn citing *Belin v. Litton Loan Servicing, L.P.*, 2006 WL 1992410 at *2 (M.D. Fla. 2006).  Because there is no allegation Plaintiffs' debt was in default when it was assigned to Defendant (when SunTrust became the servicer), Plaintiffs cannot state an FDCPA claim against Defendant.

Even assuming for the sake of argument that the FDCPA did apply to Defendant, Plaintiffs have failed to present evidence supporting their claim that Defendant committed a violation of the false name exception.  Under the FDCPA, a debt collector is obligated to use its own name when corresponding with a consumer. *See* 15 U.S.C. 1692e(14) ("The following conduct is a violation of [the FDCPA] ... [t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.").  Generally, the false name exception applies when a creditor uses a name that implies that a third party is involved in collecting its debts, "pretends to be someone else" or "uses a pseudonym or alias." *Mazzei v. The Money Store*, 349 F.Supp.2d 651, 658 (S.D. N.Y. 2004), quoting *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232, 236 (2nd Cir. 1998).

Plaintiffs allege the following in their Amended Complaint:

- The law firm of Johnson & Freedman, LLC was not involved in the collection process in any meaningful sense. The law firm of Johnson & Freedman did not make a considered professional judgment on the delinquency status of the Buckentins account.

32

- The defendant used Johnson and Freedman's name and letterhead to give the Buckentins the false impression that an attorney had become involved in the effort to foreclose on their property.

- Consequently, the letters sent to the Buckentins were not truly from Johnson and Freedman, and the Defendant was the true source of the Johnson and Freedman letter.

- Because the Defendant issued the letters under Johnson and Freedman name, giving the Buckentins the false impression that a third party was involved in the collection of the debt, the Defendant is a debt collector pursuant to section 1692a(6), and therefore is liable for violation of section 1692e(3) and (10).

(Doc. # 18 ¶¶ 98-102).

In opposition to Defendant's Motion, Plaintiffs contend that Defendant used Johnson & Freedman's "name and letterhead which gave the Buckentins the false impression that an attorney had become involved in the effort to foreclose on their property." (Doc. # 48 at 22). Plaintiffs *argue* that Johnson & Freedman never had the authority to collect on Plaintiffs' loan, and that Johnson & Freedman could not make any independent decisions with regard to Plaintiffs' loan.

However, the facts in the Rule 56 record establish that, after the first forbearance period expired in December 2010, Plaintiff's mortgage was approved for foreclosure and Defendant retained the services of Johnson & Freedman to initiate the foreclosure proceedings. (Doc. # 46, Ex. C at ¶ 4). In connection with the foreclosure proceedings, on January 27, 2011, Johnson and Freedman sent an acceleration letter and foreclosure notice to Plaintiffs, *under its own law firm name*, stating that a foreclosure sale was scheduled for Plaintiffs' Property on February 17, 2011. (Doc. # 46, Ex. A at  94; Doc. # 18-1, Ex. J). Johnson & Freedman's letter explicitly sets forth its relationship with Defendant in its letter to Plaintiffs: "This law firm represents SunTrust Mortgage, Inc., the creditor to whom the above-referenced debt is owed." (Doc. # 48-1, Ex. J).

33

There is simply no evidence that Defendant took any action using Johnson & Freeman's name, or that Defendant ever pretended to be someone else.  Therefore, Plaintiffs have failed to present evidence in support of their FDCPA false name exception claim, and Defendant is entitled to summary judgment on that claim.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. # 44) is due to be granted.  The court will issue a separate order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this _____4th_____ day of March, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE